UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA

Roanoke Division

| | |
|---|---|
| AMBER C. PATTON, | ) |
|     Plaintiff, | ) |
| v. | ) Case No. 7:16cv00250 |
| ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS, U.S. DEPARTMENT OF VETERANS AFFAIRS, | ) ) ) ) |
|     Defendant. | ) |

**Plaintiff demands trial by jury.**

## COMPLAINT

### Introduction

1. Plaintiff Amber Patton brings this action pursuant to the Rehabilitation Act of 1973 ("the Act") to remedy acts of employment discrimination perpetrated against her as a disabled veteran and federal employee by the United States Department of Veterans Affairs (VA).

2. Plaintiff contends that VA officials discriminated against her by suddenly disciplining and terminating her on a pretext of poor performance, based on an undisclosed, non-existent "policy" that the VA arbitrarily, discriminatorily, and disparately applied to Patton and other probationary, disabled employees for taking approved, accrued leave that related to associated medical conditions, treatment, and their effects. She further alleges that the VA effectively denied them reasonable accommodations, and terminated her and other employees discriminatorily and in retaliation for requesting and utilizing such reasonable accommodations, particularly accrued leave.

## Jurisdiction and Venue

3. This Court has jurisdiction over the subject matter of this civil action pursuant to the Rehabilitation Act of 1973, as amended.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391. Plaintiff was employed by the United States Department of Veterans Affairs in the Western District of Virginia at the time of her termination, and resides here. Plaintiff's employment records are maintained by the VA in this judicial district, and the decisions adverse to Plaintiff's employment were made here.

## Parties

5. Plaintiff Amber Patton, who at the time of her termination was a pregnant, disabled Army veteran, is a citizen of the United States and a resident of the Commonwealth of Virginia. At all times relevant to this suit, until her termination on or about August 16, 2013 she was employed with the VA as a Veterans Service Representative, GS-7 pay grade, in Roanoke, Virginia.

6. The VA was a covered agency employer within applicable statutes. Patton was a qualified handicapped and disabled person under the Act and its regulations.

## Facts

7. Plaintiff was an Iraq veteran hired by the VA as a Veterans Service Representative (VSR) at the Regional Office in Roanoke, Virginia (VARO) on October 1, 2012. The VARO, from the Director level down to her immediate supervisors, hired her (and most other VSR's employed in the VARO) with knowledge of and a hiring preference for her disabilities. At the time of hire and during her employment, Patton provided VARO supervisory

personnel actual notice about her conditions and the need for medical treatment and leave as an accommodation.

8. Patton's service-connected and qualifying disabilities under the Rehabilitation Act included PTSD, depression, and IBS / colitis. Later, in or around June 2013, Patton also discovered she was pregnant in a high-risk condition. The VARO had actual knowledge of Patton's qualifying disabilities and conditions, as well as the fact that they required a reasonable accommodation of related leave.

9. Patton was disabled within the meaning of the Act. These disabilities, particularly if untreated, impaired one or more major life activities. Patton, with or without reasonable accommodation, could at all times perform the essential functions of the employment position as a VSR at the VARO, and did so. Indeed, during her approximately 10 months with the VA, she had positive performance reviews at all times, on all legitimate metrics.

10. During her employment, the VARO allowed Patton to take all of her requested leave, approving all requests.

11. During the first ten months up until August 2013, Plaintiff received consistently satisfactory performance reviews on all metrics, including the primary indices of both Dependability and Attendance.

12. On August 15, 2013, Plaintiff's supervisor gave her a Monthly Progress Review dated August 14, 2013, purportedly evaluating performance for July 2013. Upon information and belief, the negative portions of this review were reviewed and directed by the VARO managers and officers.

13. For the first time, the August Monthly Progress Review rated Patton unsatisfactory for the first time, citing two categories: Dependability and Attendance. Even

though these were distinct categories, the VA provided a single pretext for both: "Your total leave balance as of 08/10/2013 is 28.25 hours."

14. The VARO's responsible officers have since sworn that a leave balance under 100 hours was the sole basis for Patton's discipline and subsequent termination the very next day, without any warning or opportunity to raise her stored hours. The responsible officers have also claimed that the VARO has an informal, unwritten "policy" to terminate all probationary employees who fail to maintain at least 100 hours of combined, stored leave.

15. The previous month, and for all months prior, Patton had a balance of stored leave comparable as that on August 10, 2013, but the VA rated her satisfactory on these two measures each month and never notified or warned her that she had any obligation to maintain 100 hours of stored leave, or was risking discipline or termination by taking any approved leave.

16. In fact, never had the VA informed any of Patton's co-workers that a balance of stored leave under 100 hours, but still above 0, could be a reason for discipline, let alone termination, because no such policy actually existed. The VA knowingly designed and applied this pretext suddenly, at the end of the probationary period, as discriminatory discipline and termination of disabled employees for using approved leave,

17. The VA used the fake "policy" as a pretext to terminate Patton before she reached the end of her probationary year. Its real motivation and practice was to terminate employees who took approved leave for medical treatment as an accommodation for disabilities, and who would be perceived as threats to take future leave for such accommodations and disability-related treatment.

4

Case 7:16-cv-00250-GEC   Document 1   Filed 05/27/16   Page 4 of 10   Pageid#: 4

18. Even the August 15, 2013 Monthly Progress Review did not itself mention any 100-hour policy. Patton's Progress Review stated only that "Employees should strive to maintain the highest leave balance possible."

19. During the meeting on August 15, 2013, Patton's supervisor did not mention 100 hours as a supposed baseline. The supervisor also gave Patton no warning that she was in danger of termination, let alone the next day. The supervisor told her that she should try to get the accrued leave hours balance higher.

20. Patton wrote onto her Progress Review that she protested the evaluation of Dependability and Attendance. Telling the VARO, she claimed: "As for my leave availability there is the issue of me not only being a service connected veteran which requires me to have so many doctors appointments but that I am also pregnant. The fact that I was a service connected veteran was made aware to you before and upon hiring. If taking leave you earned for a condition that was made aware to you when you hired us is an issue now then apparently not enough thought went into the hiring process on your part."

21. The very next day, August 16, 2013, despite full knowledge of her disabilities and related health conditions, her notice of discrimination written on the August 15, 2013 Monthly Progress Review, and her explanation of leave being an accommodation for disability-related matters, the VA terminated Amber Patton. Since then, VARO officers have claimed that the termination was based solely upon the leave hours balance referenced on the Monthly Progress Review.

22. Upon information and belief, the VA has disparately and discriminatorily applied and enforced this fake policy, and has not suddenly disciplined and terminated every other, non-

disabled, probationary employee whose leave balance has fallen below 100 hours for use of approved leave during the probationary period.

23. The 100 hours "policy," to the extent the VARO claims it exists, is designed and applied discriminatorily and disparately against disabled employees utilizing significant leave. It is neither a legitimate policy nor a credible, nondiscriminatory measure of performance measures "Dependability" and "Attendance," since the VA does not evaluate whether the leave taken by disabled employees is scheduled or unscheduled leave, approved or unapproved, or consider the purposes of such leave relative to performance measures.

24. At the same time as Patton, the VARO terminated at least two other, disabled employees who regularly took approved medical leave and sick leave, using the same or similar pretexts of performance. Upon information and belief, the VARO has done this before and since. The VARO regularly uses the false pretext of the 100 hours "policy" to disparately and discriminatorily terminate employees with qualifying disabilities or related medical conditions that may qualify as disabilities.

25. There was no written or official policy relating to the amount of leave hours to be stored, let alone a 100 hour minimum. The leave was an entitlement and its use was an accommodation.

26. The VARO likewise provided employees no notice or information linking or defining the performance-related measures Dependability or Attendance (let alone both, otherwise distinct measures) as having at least 100 leave hours stored.

27. The VA's reliance upon any unwritten "policy" was a pretext for arbitrary discrimination against probationary employees with disabilities or related health conditions who

6

sought the reasonable accommodations of using leave to address those disabilities or related conditions, which equates to denial of those requests for reasonable accommodations.

28. As a result of her illegal discipline and termination, Amber Patton, a single mother, a service-connected, disabled veteran, and a satisfactorily-performing federal employee, has been forced into the terrifying and injurious insecurity of unemployment due to the firing. She has suffered significant lost income and benefits, emotional damages and pain, as well as consequent injury to reputation, employability, and lost opportunities.

29. Plaintiff filed a timely charge and complaint with the VA's EEO, formally dated December 19, 2013. She then endured over two years of additional loss and injury as the VA delayed without explanation before reaching a Final Agency Decision dated March 24, 2016, which she received on or about March 29, 2016.

## Count I
## Rehabilitation Act of 1973, as amended
## Discriminatory Discipline and Discharge

30. Plaintiff realleges and incorporates the other paragraphs of this Complaint.

31. Patton was disciplined on August 15, 2013, and discharged by notice delivered August 16, 2013.

32. Patton was fulfilling her employer's legitimate expectations at the time of discharge.

33. The circumstances of Patton's discharge raise a reasonable inference of unlawful discrimination.

34. Upon information and belief, the VARO intentionally targets for discipline and termination employees (including Patton) who are disabled, and utilize leave to address health and leave needs related to those disabilities, their treatment, or their effects.

7

35. In addition, the VARO conceals and then suddenly applies an illusory, pretextual policy of a 100-hour or other minimum balance of stored leave by refusing to put it in writing, to notify disabled, probationary employees of it, or to evaluate performance according to that leave hours balance, until such time as it decides to use it as a pretext to terminate those disabled employees who use significant, accrued leave for their disability-related conditions. The VARO knowingly and intentionally engages in this discriminatory and disparate treatment.

36. Patton's discipline and discharge were discriminatory. As a result, she has suffered economic and non-economic injuries and damages, as set forth more fully herein.

## Count II
### Rehabilitation Act of 1973, as amended
### Failure to Make Reasonable Accommodation

37. Plaintiff realleges and incorporates the other paragraphs of this Complaint.

38. The VA had notice of Patton's qualifying disabilities and requested accommodations of leave and treatment.

39. With reasonable accommodation, Patton could perform the essential functions of the position, and did so with positive performance reviews.

40. The VA refused to make such accommodation, in that while it formally granted her medical leave to treat her disability-related medical conditions and health conditions, it then disciplined and terminated her for using that same leave.

41. As a result, Patton has suffered economic and non-economic injuries and damages, as set forth more fully herein.

## Count III
### Rehabilitation Act of 1973, as amended
### Retaliation

42. Plaintiff realleges and incorporates the other paragraphs of this Complaint.

43. Patton engaged in the protected activity of requesting annual, sick, and medical leave to treat conditions and effects associated with her disabilities.

44. The VA took an adverse employment action against her, in the form of a pretextual, negative performance review on August 15, 2013, followed by termination the next day.

45. The disciplinary review and termination occurred because Patton engaged in the protected activity.

46. As a result, Patton has suffered economic and non-economic injuries and damages, as set forth more fully herein.

**Count IV**
**Rehabilitation Act of 1973, as amended**
**Discriminatory Termination—Disparate Impact and Treatment**

47. Plaintiff realleges and incorporates the other paragraphs of this Complaint.

48. Upon information and belief, the VARO intentionally targets for discipline and termination probationary employees (including Patton) who are disabled, and utilize leave to address health and leave needs related to those disabilities, their treatment, or their effects.

49. In addition, the VARO conceals and then suddenly applies an illusory, pretextual policy of a 100-hour or other minimum balance of stored leave by refusing to put it in writing, to notify disabled, probationary employees of it, or to evaluate performance according to that leave hours balance, until such time as it decides to use it as a pretext to terminate those disabled employees who use significant, accrued leave for their disability-related conditions. The VARO knowingly and intentionally engages in this discriminatory and disparate treatment.

50. Furthermore, and alternatively, to the extent the policy exists, the VARO employs this policy in a way that causes a disparate impact of discipline and/or termination upon Patton

and other, similarly situated probationary, disabled VA employees who seek the reasonable accommodation of using their available leave.

51. As a result, Patton has suffered economic and non-economic injuries and damages, as set forth more fully herein.

**WHEREFORE,** Plaintiff Amber Patton **demands trial by jury,** and requests the Court award the following relief:

A. Damages of $300,000 for compensatory non-economic and punitive damages, plus prejudgment and postjudgment interest;

B. Economic damages of $250,000 for all past and future lost income (back pay through trial and front pay for a reasonable time), benefits, and other lost compensation, in an amount to be determined at trial, plus prejudgment and postjudgment interest;

C. Reinstatement to a position of comparable pay and quality, with restoration of all benefits and statuses that she would have enjoyed to date if not terminated;

D. Attorney fees and costs; and

E. Any other relief that the Court may consider proper and justified.

Respectfully submitted,<br>
Amber Patton, Plaintiff<br>
<br>
s/ Devon Munro<br>
Counsel

Devon J. Munro (VSB #47833)
dmunro@cranwellmoorelaw.com
CRANWELL & MOORE
P. O. Box 11804
Roanoke, VA 24022-1804
Phone: 540-344-1000
Facsimile: 540-344-7073
*Counsel for the Plaintiff*